FAIRMOUNT UNION JOINT STOCK AGRICULTURAL ASSO-
CIATION *v.* DOWNEY.

[No. 17,878.    Filed January 6, 1896.]

NEGLIGENCE.— *Injury Received by Driver on Race Track.— Proxi-
mate Cause.*—An association conducting a horse race is guilty of negligence in starting a race of ten horses on a track thirty-seven feet wide at a time when another horse which had entered the race was being driven on the track in an opposite direction and was at a point within sixty feet of such starting place, and such negligence was the proximate cause of a collision between the horses and vehicles in such race, and the injuries resulting therefrom received by one of the drivers thereof.

EVIDENCE.—*Special Verdict.—Sufficiency Of.*—All of the allegations of a complaint are not required to be found in a special verdict, but it is sufficient if the facts found constitute a cause of action within the allegations of the complaint.

From the Madison Superior Court.    *Affirmed.*

*St. John & Charles* and *Chipman, Keltner & Hendee,* for appellant.

*J. E. Moore, Freeman Cooper* and *Goodykoontz & Ballard,* for appellee.

HACKNEY, J.—The appellee sought and recovered, in the lower court, a judgment for personal injuries sustained while engaged in a horse race upon the race track of the appellant and from the alleged negligence of the appellant. The complaint was in two paragraphs, the sufficiency of each of which is here presented.

Each paragraph alleged that the appellant had advertised for and invited participation in certain races for prizes, upon its race track during its fair season of 1894, under its control and direction; that the appellee had entered and his horse had been admitted, by the appellant, to participate in one of said races to be held on a day named; that said race had been called by the appellant and the various participants were upon the track; that the appellant carelessly and negligently started a number of the participants in said race without observing that one entitled to start was not with the number so started, but was going in the opposite direction from that in which the race was started and occupying a portion of the track over which the horses so started in said race were to pass; that the horses so started by the appellant and the horse so going in the opposite direction met within sixty feet of the starting point; that the appellee's horse was then traveling at a rapid pace, and when the driver of one of the horses so started, that he might avoid a collision with the horse going in the opposite direction, suddenly swayed his horse to one side of such other horse, but in doing so made it inevitable that the appellee's horse should collide with his horse

and sulky; that the appellee's horse did collide with the horse and sulky so swayed from its course, causing the injuries complained of. It is alleged also that the appellee was without fault or negligence in said occurrence, and it was alleged that "by reason of dust and other obstructions, which he is not able to name or state, he did not see said horse and sulky going in the opposite direction, nor the turning or breaking" of the horse with which his horse so collided "until a few seconds before the collision occurred, nor until it was too late" and "was impossible to prevent a collision." In addition to these facts the first paragraph alleged that the appellant represented that said races would be conducted according to the rules of the National Association, which rules provided that all horses to participate in any race should be driven to the right of the starter's stand, turned and speeded rapidly in the opposite direction when started in a race, and that no horse should be allowed upon the track excepting those engaged in the race.

Each of the paragraphs is attacked by the appellant as disclosing (1) that the alleged collision was the result of contributory negligence; (2) that the appellant owed the appellee no duty on the occasion in question, and (3) that the injury was not the proximate result of the act of starting the horses in the manner alleged.

As we have seen, there is an express negative of contributory negligence, and this is not overcome by the allegation above quoted. That allegation, it is urged, discloses the same opportunity for the appellee to have seen the approaching horse as the appellant could have had to see it. If it was the duty of the appellant to use ordinary care for the safety of the appellee, that duty would require such assistants, suitably situated, as might reasonably guard the track

from intrusion. No corresponding duty rested upon the appellee. It is a matter of common knowledge that the agricultural associations of the state, where they conduct horse races, have starting stands, so constructed as to enable those in charge to see the entire track and observe the conduct of drivers and horses. It is a matter also of common knowledge that the track and its use are subject to the control of the associations and the starting and stopping of the races are subject to their direction. Contestants have no corresponding opportunities or privileges. When one enters such contests, by the invitation and in obedience to the rules of the society, he assumes the ordinary risks thereof, but he does not thereby absolve the society from all duty or assume the hazards of every neglect of duty on its part. We cannot, therefore, agree with the insistence that the quoted allegation discloses equal opportunities on the part of the parties to know the danger which resulted in injury. That the duty rested upon the appellant to use ordinary care, considering all of the hazards of racing upon its track, to protect the appellee from extraordinary dangers was decided, in effect, in the case of *The North Manchester, etc., Assn.* v. *Wilcox,* 4 Ind. App. 141. It was there decided further that negligence in failing to keep the track clear, while horses are rightfully driven upon it, resulting in injury by collision, constitutes the proximate cause of such injury.

The mere starting of the horses, in this instance, did not produce the injury, but starting the horses at a high rate of speed in one direction while a horse and sulky were approaching from the opposite direction, and when both must meet within a few feet of the starting point, the society then knowing, actually or constructively, of the approach of the horse, was the natural and probable cause of the injury. It was an

act from which the injury complained of might reasonably have been anticipated. Even if the particular result could not have been anticipated, our cases hold that the wrong which set in motion the cause of the injury was the responsible agency. See *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166, 40 Am. Rep. 230; *Pennsylvania Co.* v. *Congdon,* 134 Ind. 226, 39 Am. St. 251, and cases cited in each. See also, as illustrating those causes which are proximate and those which are remote, *Enochs* v. *Pittsburgh, etc., R. W. Co.,* 145 Ind. 635.

It follows that the appellant owed a duty to the appellee which it neglected to perform, and that the appellee, in consequence thereof, was injured without his fault, and the paragraphs of complaint would both be good without the allegation as to the rules of the National Association.

The trial of the cause resulted in a special verdict by the jury in the form of answers to interrogatories, and upon this verdict judgment was rendered for the appellee over the motion of the appellant for judgment in its favor. This ruling is in question upon the assignment of error and briefs of counsel. It is urged that the verdict does not sustain, but departs from the theory of the complaint in that it is not found that the appellee could not see the horse approaching and meeting those started in the race by reason of dust and other obstructions preventing him from seeing. It is not found that there was dust to obstruct the view, but it is found that appellee could not and did not see the approaching horse. This is the equivalent of the appellee's allegation on the subject. It is the fact and not the evidence nor the reasons for his inability to see. There are other interrogatories and answers, however, which disclose that there were eleven horses and sulkies in the race, to be started

upon a track thirty-seven feet wide; that they were started in tiers, two of four each and one of three; that the appellee was in the last tier; that the horses had scored once and failed to get started; that they had turned back and all but one had repeated the score and were started in the race, there being four horses and sulkies between the appellee and the returning horse, and the collision occurred within twenty-five feet from the starting point. These facts supply causes sufficient to prevent the appellee from seeing, and they are within the allegations of the complaint. All of the allegations of a complaint are not required to be found. It is enough when facts sufficient to constitute a cause of action, if within the allegations of the complaint, have been found. We may suggest the doubt, without intending to express an opinion upon it, if the allegation in question was not, at most, but an additional allegation of non-contributory negligence and not requiring affirmation by the appellee.

One interrogatory elicits the fact that the appellee, while scoring for the start, could not see the horse approaching in time to avoid the collision because his own horse commanded his entire attention. From this finding appellant's counsel skillfully evolve the argument that appellee's horse was unruly and occupied him when he should have been on the lookout for the approaching horse, and thus he contributed to the collision. Other findings show that appellee's horse was not unruly, and did not break or swerve from his proper place. Besides, it is not unnatural that a driver of one of ten horses and sulkies started together upon a thirty-seven foot track, should be fully occupied in avoiding collision with one of the ten, to say nothing of the importance of keeping his horse upon a steady gait and seeking proper oppor-

tunities to pass to the front, without looking for the approach of a horse and sulky from the opposite direction. We do not, therefore, agree with the proposition that the special verdict is upon a theory different from that of the complaint.

Having assumed that the complaint disclosed contributory negligence counsel insist that the verdict should have shown that the injury was inflicted upon the appellee willfully, and that the judgment could not be sustained because of the absence of such finding. The theory of the complaint is, for negligence and not for a willful act. Upon the theory of negligence we have held it sufficient.

We find no error in the record, and the judgment is affirmed.