REBECCA M. BLEVINS, Administratrix of the Estate of WILLIAM W. BLEVINS, v. WILLIAM H. G. FRANCE, NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC., JAMES F. CHESTNUTT, DIXIELAND SPEEDWAYS, INC., and J. &. W. CORPORATION.

(Filed 26 June, 1956.)

**1. Games and Exhibitions § 4—**

Evidence to the effect that defendants were engaged in the business of promoting, arranging and conducting automobile stock car racing, that the race in question was started while intestate's car was stalled on the track, and that the starting officials knew, or should have known, of the perilous and helpless condition of intestate, is held sufficient to be submitted to the jury on the question of defendants' concurrent negligence.

**2. Same: Negligence §§ 4½, 11—**

Evidence that officials of a stock car race started a race inadvertent to the fact that intestate's car was stalled on the track is insufficient to establish wilful or wanton injury so as to preclude the defense of contributory negligence.

**3. Negligence § 4½—**

An act constitutes wilful negligence when it involves a deliberate purpose not to discharge some duty assumed by contract or imposed by law and necessary to the safety of the person or property of another; it is wanton when done of wicked purpose or in reckless indifference to the rights and safety of others.

**4. Negligence § 19c—**

When plaintiff's own evidence establishes defendants' plea of contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom, nonsuit is proper.

**5. Negligence § 11—**

Contributory negligence need not be the sole proximate cause of injury or death in order to bar recovery, but suffices for this purpose if it be a proximate cause or one of them.

**6. Same—**

A person sui juris is under duty to use ordinary care for his own protection, the degree of care being commensurate with the obvious danger.

**7. Same—**

A party may not recover for injuries resulting from a hazard which he helps to create.

**8. Negligence § 14½: Games and Exhibitions § 4—**

Where the car of a participant in a stock car race, while following the lead car around the track preliminary to the race, stalls near the first bend, and, the motor being so rebuilt that a battery could not turn it over, is restarted by being pushed with another car, and stalls again about the middle of the back stretch, and thus remains in a helpless condition until struck by one of the racing cars, *held* the negligence of the driver in continuing to circle the track after his motor stalled the first time, instead of driving to a safety zone, contributed to the emergency, and thus precludes the application of the docrine of sudden emergency.

**9. Negligence § 11: Games and Exhibitions § 4—Doctrine of rescue held inapplicable under the evidence in this case.**

Where the car of a participant in a stock car race, while following the lead car around the track preliminary to the race, stalls near the first bend, and, the motor being so rebuilt that a battery could not turn it over, is restarted by being pushed with another car, and stalls again about the middle of the back stretch, and thus remains in a helpless condition until struck by one of the racing cars, *held* the contention that its driver stayed in the car after it stalled the second time in an endeavor to get it off the track and thus avoid the peril to the other racers, and that therefore his failure to leave the car should be governed by the doctrine of rescue, is untenable in the absence of evidence as to whether in fact he did remain in the car in the hope of getting it pushed off, or whether he tried to get out of the stalled car and was struck before he had time to do so.

**10. Negligence § 19c: Games and Exhibitions § 4—Contributory negligence of participant in stock car race held to bar recovery for his death in collision.**

Where the car of a participant in a stock car race, while following the lead car around the track preliminary to the race, stalls near the first bend, and, the motor being so rebuilt that a battery could not turn it over, is restarted by being pushed with another car, and stalls again about the middle of the back stretch, and thus remains in a helpless condition until struck by one of the racing cars, *held* the negligence of the driver in continuing to circle the track after his motor stalled the first time, instead of driving to a safety zone, when he knew the start of the race was imminent, discloses contributory negligence on his part as the sole reasonable conclusion, and nonsuit was proper in an action to recover for his death in the collision.

**11. Evidence § 8: Torts § 9a—**

Whether a release from liability in consideration of permission to enter an automobile stock car race and in consideration of benefits for injury or death under the plan provided by the promoters of the race, bars recovery for the death of a participant killed in a collision during the race, is a matter of affirmative defense, upon which defendant promoters have the

burden of proof, and nonsuit may not be entered on such affirmative defense when it is not established by plaintiff's evidence.

**12. Games and Exhibitions § 1—**

An automobile stock car race held in conformity with Chapter 177, Session Laws of 1949, is a lawful contest.

HIGGINS, J., not sitting.

APPEAL by plaintiff from *Williams, J.,* January Civil Term 1956 of CUMBERLAND.

Civil action to recover damages for an alleged wrongful death.

Plaintiff's evidence tended to show these facts:

On the night of 19 September 1953 a 220 miles Sportsmen's Modified Stock Car Race was conducted at the Raleigh Speedways by defendant J. & W. Corporation, which had a lease from Dixieland Speedways, Inc. The J. & W. Corporation conducted the race under license and sanction of defendant National Association for Stock Car Auto Racing, Inc., which hereafter will be designated as NASCAR. NASCAR officials handled the scoring, starting, stopping and pit work of the races. These officials are licensed by NASCAR, and they are usually paid by the corporations or persons conducting the race. The defendant William H. G. France and James F. Chestnutt were officers of the J. & W. Corporation, and the official program of the race listed them as directors of the race. The J. &. W. Corporation posted the prize money for the race, hired the officials and publicity man, ordered the tickets, paid all taxes, and were responsible for the conduct of the race and all bills. The purse and point fund total for that night was $15,000.00, and $9,300.00 was paid out on this race. The starter for the race was Alvin Hawkins, who had been licensed by NASCAR. He was engaged as starter by France, and had a contract with J. &. W. Corporation for this race. :

On the premises of Dixieland Speedways, Inc. is a mile oval asphalt track about 50 to 60 feet wide, which has safety zones so cars can get off the track. There were lights lighting the track and grandstand. A loud-speaker was installed at the track. The weather was hot and clear, and there was not any dust to prevent spectators from clearly seeing the race. About 12 to 13 thousand spectators were in the stands and about 1,000 in the infield.

About sixty stock cars were entered in and engaged in this race. One of the participants was William W. Blevins, plaintiff's intestate. Blevins was 24 years old. He was in charge of the body shop of N. W. Horne's garage, working on a commission basis. Horne testified: "He was a body man. They didn't make them no better." He had made in this work about $7,000.00 twelve months before his death. He had

been in 7 or 8 races before the one in which he was killed. In a prior race he had been involved in an accident, and his car turned over. His wife had spoken to him about the risks he was taking in these races. His wife had seen every race he had been in. She testified: "I don't remember if I had ever seen Bill race before in the car in which he was racing this night that he was killed."

The car Blevins had in this race had a rebuilt V-8 Mercury motor, which he worked on all night prior to the race in which he was killed. The motor was rebuilt so strong that a battery was not sufficient in voltage to start it. When Blevins started this car, he had to have it pushed off each time. Lots of racing cars have to be pushed off. The door was held while racing with a leather band. If one wanted to get out he could snap the band in a second. It would take five seconds, something like that, for the driver to unfasten his safety belt, unsnap the band on the door, and get out of the car.

In the starter's stand was the starter Alvin Hawkins and an honorary starter, E. G. "Cannonball" Baker, who actually operated the flags to start and conduct the race under the supervision of Hawkins. When the race was called, the participating cars lined up in depth three abreast with the lead car driven by France opposite the starter's stand. Blevins' car was pushed off to start it. When the cars were lined up, they were put in motion by the starter's flag, and led by the pace car driven by France, proceeded around the track at a slow speed. Blevins' car stalled near the first bend. A car pushed it and it started off, and went around the track and stopped again about the middle of the back stretch. France and the racing cars behind him circled the track, and when France passed the starter's stand he gave a signal indicating one more lap around the track before starting the race. As the cars approached the starter's stand the second time a voice over the loud speaker said "There is a car on the track: don't start the race." This was said three times. The starter dropped the green flag starting the race. Almost simultaneously with the dropping of the flag the drivers gunned their motors, which made a loud noise that was heard a long ways. The racing cars roared away. The last cars had to travel the entire north turn, come down in front of the grandstand and make their south turn before they got to Blevins' car. The first cars had already made the north turn and were practically in front of the grandstand. From the start of the roar of the race until the first cars came around to the Blevins' stalled car, approximately 30 to 40 seconds elapsed according to one witness, a few seconds according to another. Just before the race began a car was behind Blevins' car, which was stalled the second time, and headed in a position to push him. When the race started this car behind Blevins' car pulled off onto a safety apron.

Several of the racing cars went by Blevins' car, but a car driven by one Midkiff ran into the rear of Blevins' car. There was an explosion. Fire flamed from the Blevins' car. Blevins was killed, either by the collision or by fire.

At the close of plaintiff's case, the court sustained a motion for non-suit made by Dixieland Speedways, Inc., and overruled a similar motion of the other defendants.

The defendants denied any negligence on their part, and pleaded as defenses contributory negligence, assumption of risk, insulating negligence of Midkiff and certain releases signed by the deceased Blevins prior to the race. The defendants offered in evidence the following written instruments signed by the deceased Blevins:

*One.* An application by him to NASCAR for license as a race track driver, dated 7 June 1953.

*Two.* A Benefit Plan Registration issued by NASCAR based upon his driver's license issued to him by NASCAR on 16 June 1953. This paper begins: "The undersigned hereby applies for registration in the Benefit Plan of Competitor Liaison Bureau of NASCAR, Inc. in accordance with NASCAR rules." The paper gives his name, residence, age, occupation, name of wife and child, and designates them as beneficiaries. Then the paper signed by Blevins contains this language:

"I expressly understand and agree that upon issuance of NASCAR license to me, and upon payment of fees required by NASCAR, I will be entitled only to the benefits provided by the Benefit Plan of Competitor Liaison Bureau of NASCAR, INC., for injuries (including death) I might sustain in NASCAR-sanctioned racemeets or other events pursuant to the contract between NASCAR and Competitor Liaison Bureau of NASCAR, Inc., and the insurance carrier and upon presentation of proofs required.

"It is further understood and agreed that the foregoing shall be and constitutes the limit of liability for any injuries (including death) that I may incur, provided claim is filed within 30 days of accident.

"In consideration of the acceptance by NASCAR of my license application and issuance of license, and in consideration of the foregoing, I do hereby release, remise and forever discharge NASCAR, the promoters presenting races or other events under NASCAR sanction, and the owners and lessees of premises in which NASCAR sanctioned races or other events are presented, and the officers, directors, agents, employees and servants of all of them, of and from all liability, claims, actions and possible causes of action whatsoever that may accrue to me or to my heirs, next of kin and personal representatives, from every and any loss, damage and injury (including death) that may be sustained by my person and property

while in, about, and en route into and out of premises where NASCAR sanctioned races or other events are presented.

"I have read and fully understand the foregoing.

(s)  WILLIAM W. BLEVINS   (L.S.)
(Signature)."

*Three.*  A release as follows:

"R E L E A S E
NASCAR       Track—Raleigh, N. C.
        · Date —Sept. 19, 1953.

IN CONSIDERATION of receiving permission from J. & W. Inc. to enter upon the premises of this speedway, the receipt of such permission being hereby acknowledged, and in further consideration of receiving permission to participate, when qualified either as a driver, mechanic, owner, attendant, or in any other capacity, in any race held at these premises, the receipt of such permission being also hereby acknowledged, each of the undersigned hereby releases NASCAR, the licensed promoter, and its agents, officers, servants, and employees, of and from any and all liability, claims, demands, actions, and causes of action whatsoever, arising out of or related to any loss, damage, or injury, including death, that may be sustained by any or each of the undersigned, or any property of any or each of the undersigned, while in, on, or upon these premises, or any premises leased to, owned by, sanctioned by, or under the control or supervision of NASCAR, or en route to or from these premises, or any other premises leased to or under the control or supervision of NASCAR.

"Each of the undersigned being duly aware of the risks and hazards inherent upon entering upon said premises and/or in participating in any races held at said premises, hereby elects voluntarily to enter upon said premises, knowing their present condition and knowing that said condition may become more hazardous and dangerous during the time that each of the undersigned is upon the said premises.  Each of the undersigned hereby voluntarily assumes all risks of loss, damage, or injury, including death, that may be sustained by any or each of the undersigned, or any property of any or each of the undersigned while in, on or upon said premises.

"This release shall be binding upon the distributees, heirs, next of kin, executors and administrators of each of the undersigned.

"In signing the foregoing release, each of the undersigned hereby acknowledges and represents:

(a)  That he has read the foregoing release, understands it, and signs it voluntarily;

(b) That he is over 21 years of age and of sound mind;

(c) That he is not an agent, servant, or employee of NAS-CAR, and/or any of the agents, officers, servants, or employees of the promoter;

(d) That he is an independent contractor and assumes and takes all responsibility for all charges, premiums and taxes, if any, payable on any funds he may receive as a result of his activities, including, without limiting the generality of the foregoing, social security taxes, unemployment insurance taxes, compensation insurance, income taxes and withholding taxes.

"IN WITNESS WHEREOF, each of the undersigned has hereunto set his hand and seal this 19th day of September 1953.

| SIGNATURE | PITT PASS NO. |
|---|---|
| * * * | * * * |
| 50   BILL BLEVINS | 0611" |

(This form was also signed by approximately 50 others).

*Four.* Official agreement between NASCAR and Alvin Hawkins stating that he is not an employee of NASCAR, and setting forth his duties as an official starter.

Mrs. Blevins testifying for herself as plaintiff said that after her husband's death, pursuant to the Benefit Plan Registration issued to her husband by NASCAR, she received a cheque in the sum of $3,000.00 as a death benefit, but did not cash the cheque.

At the close of all the evidence all the defendants, other than Dixieland Speedways, Inc., whose motion for nonsuit had already been allowed, moved for judgment of nonsuit which was granted. The plaintiff did not appeal as to Dixieland Speedways, Inc.

From the judgment of nonsuit entered as to all the other defendants, the plaintiff appealed, assigning error.

*Dickson Phillips and Sanford, Phillips & Weaver for Plaintiff, Appellant.*

*Tally, Tally & Brewer and Long, Ridge, Harris & Walker for Defendants, Appellees.*

PARKER, J. The plaintiff alleges in her complaint five acts of negligence. She alleges that the defendants were jointly, severally and concurrently negligent and careless in that they wilfully, wantonly and intentionally (1) failed to treat the unpaved portion of the track to hold down dust, and failed to provide a safe track on which said race could be run in reasonable safety, and (2) appointed an inexperienced man, well knowing him to be inexperienced, to control the race as

starter. The plaintiff has offered no evidence at all to support the above two allegations as to negligence. The other three allegations as to acts of negligence are to the effect that the defendants started the race when they knew, or by the exercise of due care could have known, that the deceased Blevins was in a dangerous, exposed and helpless condition, and that they knew, or by the exercise of due care could have known, that he was apt to be killed, if the race was started.

The official program listed defendants France and Chestnutt as directors of the race. France engaged the starter of the race, and drove the pace car. Plaintiff's evidence taken in the light most favorable to her, as we are required to do on a motion for nonsuit, is sufficient to make out a case of actionable negligence against the defendants on the theory that all of them were engaged in the business of promoting, arranging and conducting the race and were guilty of concurrent negligence. *Midkiff v. National Ass'n. for Stock Car Auto Racing*, 240 N.C. 470, 82 S.E. 2d 417; *Fairmont Union Joint Stock Agr. Ass'n. v. Downey*, 146 Ind. 503, 45 N.E. 696; *Association v. Wilcox*, 4 Ind. App. 141, 30 N.E. 202.

However, considering the evidence in the same light, it is not sufficient to establish wilful or wanton injury so as to preclude the defense of contributory negligence. *Brendle v. R. R.*, 125 N.C. 474, 34 S.E. 634; *Fry v. Utilities Co.*, 183 N.C. 281, 111 S.E. 354; 38 Am. Jur., Negligence, sec. 178. This Court said in *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36: "An act is done wilfully when it is done purposely and deliberately in violation of law (*S. v. Whitener*, 93 N.C. 590; *S. v. Lumber Co.*, 153 N.C. 610), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. *McKinney v. Patterson, supra*. 'The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law.' Thompson on Negligence (2 Ed.), sec. 20, quoted in *Bailey v. R. R.*, 149 N.C. 169. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. *Everett v. Receivers*, 121 N.C. 519; *Bailey v. R. R., supra*. A breach of duty may be wanton and wilful while the act is yet negligent; the idea of negligence is eliminated only when the injury or damage is intentional. *Ballew v. R. R.*, 186 N.C. 704, 706."

We are now confronted with the question of contributory negligence on the part of plaintiff's intestate. When the defendant pleads contributory negligence, and the plaintiff's evidence establishes such negligence so clearly that no other conclusion may be reasonably drawn

therefrom, the defendant is entitled to have his motion for judgment of nonsuit sustained. *Donlop v. Snyder,* 234 N.C. 627, 68 S.E. 2d 316; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361.

Plaintiff's negligence to bar recovery need not be the sole proximate cause of injury or death. It suffices, if it contributes to his injury or death as a proximate cause, or one of them. *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Bus Co. v. Products Co.,* 229 N.C. 352, 49 S.E. 2d 623; *Moore v. Boone,* 231 N.C. 494, 57 S.E. 2d 783.

This Court said in *Mintz v. Murphy,* 235 N.C. 304, 314, 69 S.E. 2d 849: "The law imposes upon a person *sui juris* the obligation to use ordinary care for his own protection, and the degree of such care should be commensurate with the danger to be avoided."

Plaintiff's evidence shows plainly these facts: Her intestate, 24 years old, was a body man in charge of the body shop of N. W. Horne's Garage, and skilled sufficiently in such work to have made at it $7,000.00 the year before his death. He voluntarily participated the night of his death in the dangerous sport of automobile racing, hazardous to life and limb, as a contestant for the prize money offered by the promoters of the race. He had participated before in 7 or 8 such races, and in one his racing car turned over. He willingly took his part in such a race with about sixty other racing cars, and knew the dangers that inhered in it so far as they are obvious and necessary. The timorous may stay at home. The car he had on the track for the race had a rebuilt V-8 Mercury Motor, which he had worked on all night prior to the night of his death. The motor was rebuilt so strong that the battery did not have sufficient voltage to start the motor. To start the motor the car had to be pushed off. Knowing this fact his car was pushed off and with about sixty other racing cars he began to follow France around the track in the pace car preliminary to the start of the race. Near the first bend his car stalled. The clear inference is that his rebuilt motor finished the night before was not properly functioning. A car pushed him off starting his motor again, and instead of driving off the track into a safety zone, he started to circle the track well knowing that the start of the race with about sixty cars was imminent. About the middle of the back stretch his car stalled and stopped again. He could have unsnapped his safety belt and the band on the car door, and have stepped out and reached a place of safety in a few seconds. He remained in his stalled car. With sixty racing cars the drivers in the cars behind the leaders could not see the stalled car until the leaders swerved around it. When the green flag dropped, the drivers gunned their motors, which made a loud noise, and the racing cars

roared away.  In their path was his stalled automobile, a hazard that he created after his car had stalled the first time and had been pushed off by driving it some distance on the track until it stalled again instead of driving onto a safety zone, and this hazard not only resulted in his death but also in the death of Midkiff, who ran into his stalled car. "A plaintiff will not be permitted to recover for injuries resulting from a hazard he helped to create."  *Blake v. Tea Co.,* 237 N.C. 730, 75 S.E. 2d 921.

This is not a case where a motor stalls suddenly without warning leaving a car in a dangerous situation.  Here Blevins had had warning when the motor stalled on the track at the first bend.

The plaintiff contends that the doctrine of sudden emergency should be applied to Blevins' failure to get out of his car after it stalled on the back stretch.  This "principle is not available to one who by his own negligence has brought about, or contributed to the emergency."  *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593.  That Blevins was negligent, after his car stalled at the first bend, and was pushed off, in continuing to circle the track until his motor stalled in the back stretch, instead of driving to a safety zone, is plain.  This negligence brought on, or contributed to the sudden emergency.

The plaintiff further contends that Blevins "realized that a terrible danger was presented, not only to it (his car) and himself, but to all the cars and their drivers coming on; the only way for it to be got off the track was for him to guide it off, either under its own power or by propulsion from another car; when he left it, the die would be cast; accordingly, he is entitled to the extremely reasonable inference that he stayed with the car to get it off the track to prevent collision, this is bolstered by the uncontradicted testimony that another car came in behind him in position to push."  When the race started, this car behind Blevins' car pulled off onto a safety apron.  Plaintiff invokes the rescue doctrine set forth in *Alford v. Washington,* 238 N.C. 694, 78 S.E. 2d 915; *Norris v. R. R.,* 152 N.C. 505, 67 S.E. 1017; 38 Am. Jur., Negligence, sec. 228.  This is not a case of one who sees a person in imminent and serious peril caused by the negligence of another.  The "terrible danger" of Blevins' stalled car was a peril Blevins created by his own negligence.  When the green flag dropped, we do not know the speed of the racing cars as they approached Blevins' car, the time it took the leading cars to reach his car, and the evidence does not show whether Blevins had time to get out of his car after the race started before the racing cars began to pass.  Whether he tried to get out of his car or not, the evidence does not show.  It may be that he tried to get out, and his car was struck before he could do so.  It may be that he did not try to get out, but stayed in the car hoping that it would be pushed off so that he could participate in the race for the prize money, as he did

when it first stalled, or could get it off the track. It is all conjecture and speculation. There is no evidence, or any reasonable inference to be drawn therefrom, to support the contention that the rescue rule applies.

The evidence showing that Blevins drove on the track for the race of about sixty cars a car that he spent the prior night in rebuilding the motor, that the car could not be started unless it was pushed off, that in the preliminary circling of the track by these cars in preparation for the race his car stalled on the first bend, that it was pushed off, and that he knowing the start of the race was imminent did not drive his car to a place of safety, but continued to circle the track until his car stalled again about the middle of the back stretch, and that in a matter of seconds the race began and a racing car ran into his car killing him and the driver of the other car, shows contributory negligence on Blevins' part so clearly that no other conclusion can reasonably be drawn therefrom, and such negligence contributed to his death as a proximate cause, or one of them. To defeat a recovery Blevins' negligence need not be the sole proximate cause of his death. *Sheldon v. Childers, supra; Moore v. Boone, supra.*

The serious questions argued in the briefs, as to whether the Release and Benefit Plan Registration signed by Blevins and asserted as an affirmative defense by the defendants are valid and enforceable and bar plaintiff's action, are not presented for decision in our consideration of the judgment of nonsuit entered, for the reason that plaintiff's evidence does not establish the truth of this affirmative defense as a matter of law. The burden of proof of this affirmative defense is upon the defendants, and these instruments were offered in evidence by the defendants. Under such circumstances no matter how clearly the affirmative defense appears in the evidence of the defendants a judgment of nonsuit may not be entered based on such affirmative defense. *Hedgecock v. Ins. Co.,* 212 N.C. 638, 194 S.E. 86; *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742.

In *NASCAR, Inc. v. Blevins,* 242 N.C. 282, 87 S.E. 2d 490, there was an unsuccessful attempt to have the Court pass on the Benefit Plan Registration here under the Uniform Declaratory Judgment Act, G.S. 1-253 *et seq.* The Court did not rule on it for, as presented, the question was moot.

The automobile race at Raleigh Speedways in which Blevins was killed was a lawful contest. Chapter 177, 1949 Session Laws of North Carolina, prohibits motor-cycle and motor vehicle races on Sunday in Wake County. *S. v. Chestnutt,* 241 N.C. 401, 85 S.E. 2d 297. The race in which Blevins was killed was stopped at midnight.

Likewise the contract of the starter of the race with NASCAR was introduced in evidence by the defendants.

The judgment of nonsuit entered below is
Affirmed.

HIGGINS, J., not sitting.