BUD STARNES, Administrator of the Estate of FANNIE STARNES Mc-
MANUS v. GRADY McMANUS.

(Filed 29 January, 1965.)

**1. Automobiles § 35—**

Allegations that defendant operated his automobile carelessly and heed-
lessly and with wanton and wilful disregard for the rights and safety of
others merely state conclusions of law.

**2. Automobiles § 42k—**

Evidence tending to show that intestate, knowing that her husband was
drunk, planted herself on the highway in his lane of travel to flag him
down, and remained there after bystanders warned her that he might run
over her, *held* to disclose contributory negligence as a matter of law barring
recovery for her wrongful death resulting when he struck her without turn-
ing or slackening speed.

APPEAL by defendant from *Brock, S. J.,* August 1964 Session of
UNION.

Action for the wrongful death of a pedestrian, defendant's wife. In
his complaint, plaintiff alleges that the death of his intestate was
caused solely and proximately by the negligence of defendant in that
he operated his automobile upon a public highway at an unlawful
speed, without keeping it under control, and failed to drive it to his
left in order to avoid colliding with the intestate. In these general terms
plaintiff alleged, also, "(t)hat he operated his 1947 Chevrolet auto-
mobile carelessly and heedlessly and in wanton and willful disregard
of the rights and safety of others then upon said road and without due
care and caution and circumspection and at a speed in such a manner
as to endanger persons and property then upon said road." In his an-
swer defendant admitted that the intestate died from injuries inflicted
by his automobile. He denied his actionable negligence and alleged that
the intestate's own negligence contributed to her death in that "she
walked out into said road in front of said automobile and stopped in
its line of travel facing said automobile in complete disregard of her
safety . . . and undertook to force said automobile to stop by delib-
erately placing herself . . . in its line of travel."

Defendant offered no evidence. There was no substantial conflict in
the testimony, which, except when quoted, is summarized as follows:

On June 30, 1961, at about 6:00 p.m., plaintiff's intestate, Fannie
McManus, went to her father's house, located 20 feet from the north
edge of rural road No. 2115, which is unpaved, graveled, and 18 feet
wide. The intestate's husband, defendant, had preceded her there. He
was drunk. When defendant observed the intestate walking toward the
house from the west, he told her brother, the brother's wife, and a neigh-

bor, who were seated in the front yard, that "he was going to run on down the road and turn around and come back and hear her grumble with him some." Thereupon, he drove his 1947 Chevrolet in an easterly direction toward the South Carolina line. When the intestate arrived, she stepped up onto the road bank and asked the group where her "drunken husband" was. Someone told her that he had gone "toward the state line." Almost immediately they heard defendant's car returning, and his wife walked out into the road and stopped in the middle of the west-bound lane. From there she could see, according to the varying estimates, from 100 feet to several hundred feet to the east. "Fannie was standing in the road looking in the direction that Grady was coming. She was standing there with her hands on her hips facing Grady's car. She stood that way after the car had come in sight from towards the South Carolina line, headed west . . . She said she was going to flag him down . . . The car was moving at a pretty good speed . . . If he had been looking at the road he could have seen her and she could have seen him also."

One of the group in the yard, the neighbor, said: "I told her to get out of the road, he might run over her, so sure enough he did." The intestate had made no move to get out of defendant's lane of travel until he was about 10 feet from her, when "she moved her right foot and throwed her right hand up . . . just about the time that Grady struck her." No other traffic was approaching and there was "plenty of room where he could have passed on the further side of her if he had wanted to." At no time did defendant change his course, slow down, or apply his brakes. "He just run right in facing her. She stayed on the car until they got down the road a good piece and it slung her off . . . She was dead time she hit the ground." Defendant's car was damaged on the center of the hood and there was a dent, as well as blood, on the right fender. Defendant "said that he could have missed her if he had been looking at the road but he weren't looking at the road, he was looking in the yard."

Defendant's motion for nonsuit, made at the close of the evidence, was denied. The jury answered the issues of negligence, contributory negligence, and damages in favor of plaintiff. From judgment entered on the verdict defendant appeals.

*E. Osborne Ayscue for plaintiff.*
*Smith & Griffin for defendant.*

SHARP. J.  Undoubtedly, plaintiff proved the negligence he had effectively alleged. The allegations of reckless driving, stated almost in the words of the statute and without specification of wilful and wanton

conduct, are merely the pleader's conclusions, which add nothing to plaintiff's allegations of ordinary negligence. *Fleming v. Drye,* 253 N.C. 545, 117 S.E. 2d 416; *Troxler v. Motor Lines,* 240 N.C. 420, 82 S.E. 2d 342. Plaintiff likewise proved the contributory negligence of his intestate and thus barred his recovery. *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549. Knowing that defendant was drunk, plaintiff's intestate planted herself in defendant's lane of travel to flag him down, and there she remained after the group who saw him leave warned her that he might run over her — "and sure enough, he did." It is obvious that the intestate failed to exercise for her own safety the care of an ordinarily prudent person and that her negligence was one of the proximate causes of her unnecessary death. " 'A plaintiff will not be permitted to recover for injuries resulting from a hazard he helped create.' " *Id.* at 343, 93 S.E. 2d at 556. No other reasonable inference is possible from plaintiff's eivdence; so, the motion for nonsuit should have been allowed. *Holloway v. Holloway,* 262 N.C. 258, 136 S.E. 2d 559; *Blake v. Mallard,* 262 N.C. 62, 136 S.E. 2d 214.

Reversed.