CALVIN MONROE BULLARD v. ELON DICKENS CONSTRUCTION COMPANY, INC.

No. 7511SC1058

(Filed 19 May 1976)

Negligence § 35— collapse of scaffold — contributory negligence

In an action by an employee of a shingling subcontractor to recover for injuries received when a scaffold furnished by defendant general contractor collapsed, plaintiff's own evidence disclosed that he was contributorily negligent as a matter of law where plaintiff testified that he failed to inspect the scaffold and only noticed lack of adequate cross-member support after going upon the scaffold and using it, that he remained on the scaffold while trying to add more nails to the cross-members although the safer method would have required reinforcing the scaffold while standing on an adjacent ladder, and that the scaffold collapsed when he attempted to drive a nail into it.

APPEAL by plaintiff from *Gavin, Judge.* Judgment entered 25 September 1975 in Superior Court, LEE County. Heard in the Court of Appeals 9 April 1976.

Plaintiff, working for a shingling subcontractor, brought this action against the general contractor for personal injuries sustained on a job site due to defendant's allegedly defective and negligent construction and maintenance of a scaffold which collapsed throwing plaintiff to the ground. Plaintiff alleged that defendant provided the scaffolding for the subcontractor and that through defendant's negligence plaintiff sustained injuries totalling $100,000.

Defendants' answer, inter alia, denied negligence, and averred that plaintiff was contributorily negligent and had assumed the risk. Regarding contributory negligence, defendant averred that plaintiff "failed to inspect the scaffold and test the same before making use of it, in that he carelessly and negligently failed to inspect the cross-members before entering onto said scaffold, in that he carelessly and negligently attempted to secure the scaffold to cross-members while upon said scaffold when he knew that said scaffold needed additional support, and that he failed to use due care for his own safety when he knew or should have known that said scaffold was not constructed for his use and in that he otherwise failed to exercise reasonable care for his own safety. Such negligence on the part of plaintiff is hereby pleaded as contributory negligence and in bar of plaintiff's right to recover herein."

At trial, Thomas Garner, employed by the subcontractor, testified for plaintiff that defendant gave the subcontractor permission to use the scaffolding. Plaintiff and Mr. Garner went onto the scaffold with "a bunch of shingles," weighing approximately 80 pounds, and chalk line "and chalk to lay the roof off." Garner recalled that after "chalking the courses," he "went down on the ground for something, I don't remember what. While I was going down to the ground, Calvin Bullard told me that there wasn't but one nail on the end of the scaffold, and he wanted me to throw up some nails. That was after I reached the ground. I went around there to the porch and got some sixteen penny nails and throwed them to him. Then he walked over to the end of the scaffold and the next thing I knew it was coming down. When it came down, as to whether I saw Mr. Bullard land, a glimpse I did, but I don't readily recollect exactly how it happened, I was getting something out of the truck when he fell, I forgot what it was. I seen him coming down. I didn't exactly see him when he reached the ground, I couldn't honestly say. I did see a 2 by (sic) hit him in the head."

On cross-examination, Garner, whose brother owned the roofing company, stated that they " . . . did not make an inspection of the scaffolding before we got on the scaffolding." Apparently, plaintiff started to nail the scaffolding while standing on it and the next thing Garner saw was the unit collapse.

Plaintiff, testifying on his own behalf, stated that he did not inspect the unit but "generally looked it over" before going upon it. He recalled that during the course of their work, he "saw a cross section of two by fours where there was only one nail. It was the section or joint on the right end on the end one. That is on the outside post. I didn't see any nail holes or holes around that one nail. When I saw that there wasn't but one nail, I told Tom to see if he could find me some nails that we was going to have to have more than one bundle of shingles up there to get five courses of shingle spacing. Mr. Garner threw me some nails. When he threw me the nails, I started to get one started, and that is when the scaffold fell. As to where that was at when it started, it was in that piece that had one nail in it. I did not try to drive it in. I decided to drive another nail. As to how hard I hit it, I just tapped it enough to get it started. Yes, I just tapped it enough to get it started. Then the scaffold fell. The end of the scaffold fell, the

right end. After that, all of the scaffold fell, that end, that part; from the middle to the end that fell. The two by eights fell, they come down. Yes, I did fall." Plaintiff explained that he tried to put more nails into the unit because they were about " . . . to bring up a right smart more shingles, and I felt a little better about it since the shingles were so heavy and all."

Plaintiff explained further that he " . . . didn't come down off the scaffold and get a ladder and go up [on the ladder] . . . [to] secure the cross-members, rather than standing on the scaffold and nailing it [because] I thought it would be faster. Looking back now I don't see how I could have been hurt if I had left the scaffold and come down from the scaffold and gotten on a ladder and driven the nails." Plaintiff further noted that they usually worked "off the ladder," but used the scaffold because they could do their task "faster from a scaffold than we could from a ladder." Plaintiff also recalled that "Mr. Garner suggested to me that I nail it from the ladder. . . . " Plaintiff further agreed that the "safe and proper procedure for nailing it . . . [would be] to get a ladder and stand it up beside the house."

Plaintiff also presented medical evidence, indicating back injuries.

At the close of plaintiff's evidence, defendant moved for a directed verdict. From the order granting defendant's motion, plaintiff appealed.

Other facts necessary for decision are set out below.

*Ronald T. Penny for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay, by I. Edward Johnson, for defendant appellees.*

MORRIS, Judge.

Plaintiff, noting the evidence of defendant's negligence, contends that the trial court erred in granting defendant's motion for a directed verdict. We disagree.

Judge Graham stated in *May v. Mitchell*, 9 N.C. App. 298, 300, 176 S.E. 2d 3 (1970), that

"In determining whether a judgment directing verdict for the defendant may be sustained on the grounds of insuffi-

cient evidence to show actionable negligence on the part of defendant or because the evidence establishes the plaintiff's contributory negligence as a matter of law, we are guided by the same principles that prevailed under our former procedure with respect to judgments of nonsuit. . . . All of the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which legitimately may be drawn therefrom . . . . And unless plaintiff's own evidence so clearly establishes his contributory negligence as one of the proximate causes of his injury that no other reasonable inference may be drawn therefrom, the issue of contributory negligence is for the jury. . . . " (Citations omitted.)

Plaintiff's own evidence, taken in the light most favorable to plaintiff, indicates that plaintiff was contributorily negligent as a matter of law. The uncontroverted testimony presented by plaintiff shows that he failed to inspect the unit and only noticed the lack of adequate cross-member support after going up on the equipment and using it. He also stated that he remained on the scaffold while trying to add more nails to the cross-members and indicated that the safer and better method would have required leaving the scaffold and reinforcing the cross-members while standing on an adjacent and freestanding ladder. Plaintiff instead for the sake of expediency rendered the repairs while remaining on the scaffold.

The long-standing general rule requires that the entry of directed verdict, is warranted " ' . . . when it appears from the evidence offered on behalf of the plaintiff that his own negligence was the proximate cause of the injury, or one of them.' " *Matheny v. Motor Lines*, 233 N.C. 673, 681, 65 S.E. 2d 361 (1951). (Citation omitted.) Also see *Raper v. Byrum*, 265 N.C. 269, 144 S.E. 2d 38 (1965). Here all of plaintiff's evidence indicates that his own negligence was a proximate cause of the mishap, and this contributory negligence, as a matter of law, bars plaintiff's recovery. Every person bears " ' . . . the obligation to use ordinary care for his own protection, and the degree of such care should be commensurate with the danger to be avoided.' " *Blevins v. France*, 244 N.C. 334, 342, 93 S.E. 2d 549 (1956). (Citation omitted.) This plaintiff improvidently failed to take those steps which would have avoided the fall.

Thus the evidence " . . . establishes plaintiff's contributory negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom." *Leonard v. Garner*, 253 N.C. 278, 280, 116 S.E. 2d 731 (1960).

The directed verdict was properly granted.

Affirmed.

Judges PARKER and MARTIN concur.