ARTHUR O. ADAMS, Next Friend GEORGE LINDSAY ADAMS, Minor *v.* STATE BOARD OF EDUCATION.

(Filed 4 June, 1958)

**1. State § 3c—**

The findings of fact of the Industrial Commission under the State Tort Claims Act are conclusive if supported by competent evidence. G.S. 143-293.

**2. Negligence § 11—**

Contributory negligence is such an act or omission on the part of the plaintiff amounting to a want of ordinary care which concers with some negligent act or omission on the part of the defendant so as to constitute the act or omission of the plaintiff a proximate cause of the injury complained of.

**3. Negligenc e§ 5—**

Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and from which a person of ordinary prudence could have reasonably forseen that such a resultfi or some similar injurious result, was probable under the facts as they existed.

**4. Negligence § 11—**

In order for contributory negligence to bar plaintiff's recovery, defendant has the burden of proving not only that plaintiff was guilty of contributory negligence but also that such contributory negligence was a proximate cause of the injury.

**5. Negligence § 12—**

An infant between the ages of seven and fourteen is presumed incapable of contirbutory negligence, but the presumption is rebuttable.

**6. Same—**

The test for determining contributory negligence of a minor is whether the child acted as a child of its age, capacity, discretion, knowledge and experience would ordinarily have acted under similar circumstances.

**7. Same: State § 3b— Evidence held insufficient to support conclusion that minor was guilty of contributory negligence.**

The evidence tended to show that the janitor of a school was operating a power mower on the playground in the morning before classes had started, during a period when pupils were allowed and accustomed to play, although the mower was not ordinarily used during play periods, that the mower was being operated after the guard covering the blade had been removed and that claimant, an eleven-year-old boy, while playing tag with two schoolmates, ran in the direction of the mower, closely pursued by his two companions, that notwithstanding the noise of the motor he did not see it until he was about 3 feet from it, approaching it from its side and rear, and that he slipped on the wet grass and skidded into the revolving blade. *Held:* The failure of the minor to heed the noise of the motor and turn sooner may not be inferred as a proximate cause of his injuries under the circumstances, since he had no notice or knowledge of the dangerous and exposed condition of the blade and might have escaped injury had not his foot slipped on the wet grass, and the evidence is insufficient to support the finding of the Industrial Commission that the minor's contributory negligence barred recovery under the State Tort Claims Act.

APPEAL by defendant from *Preyer, J.*, at January Civil Term, 1958, of GUILFORD (Greensboro Division).

Proceeding instituted before the North Carolina Industrial Commission under the State Tort Claims Act (Ch. 143, Article 31, General Statutes of North Carolina as amended) to recover for personal injuries to the plaintiff.

All the evidence was offered by the plaintiff. The hearing Commissioner found these material facts:

"1. That on September 22, 1954, the infant plaintiff, whose twelfth birthday was on October 14, 1954, was a regularly enrolled pupil in the fifth grade of Sumner School in Guilford County, . . .

"2. That on the date above set forth . . . Eugene Evans was the duly appointed and constituted janitor for said school; . . .

"3. That a part of Eugene Evans' regular duties was to mow the grass on the school grounds; that he did this work with a power lawn mower; that the engine which propelled this mower and its equipment was a large Stratton motor which developed seven or eight horsepower; that this motor was on top of a metal casing; that this metal casing was mounted on four rubber wheels; that there was a trailer attached to the rear of said casing which was mounted on two rubber wheels; that the operator of said mower sat on a raised seat on the top of said trailer; that this seat was about the same height

as the top of the motor on the metal casing; that the blade on the mower was at the front of the metal casing; that it was of the whirl-wind type with a rotary blade and cut a swath of about thirty inches; that said mower, when in operation, moved at a speed about the same as a normal walking rate *and made the noise of a small motorcycle;* that this mower was originally equipped with a metal guard about 36 inches long and 6 inches wide which covered the entire top and front of the rotary blade; that this guard was adjustable according to the type of ground being mowed; that it protected the blade from bushes and other objects and also acted as a shield from said blade; that some time prior to September 22, 1954, this metal guard was taken off of the mower so that the motor could be repaired, and was never replaced; that said mower had been used to cut the grass on said school grounds since 1947, and that September 22, 1954, was the first or second day on which it had been so operated during said time without the guard thereon. (Italics added.)

"4. That on the date herein complained of the infant plaintiff, George Lindsay Adams, and his two friends, William Paskhal, age 11 and Jimmy Hamilton, age 10, were carried to the Sumner School in a regular school bus; that they arrived at said school at about 8 a.m., and got out of the bus at the usual stop on a circular driveway at the rear of the main school building; that they first went to their room and put their books up and then came back to the grounds at the rear of the school building to play chase, the infant plaintiff being chased by his two friends; that at said time the power lawn mower described in the preceding paragraph was being operated by Eugene Evans on a part of the area included in the playgrounds of said school, said part being a strip of land about 107 feet wide between the circular drive-way and a public highway on the side of said school grounds; that between the circular driveway and the place where said mower was being operated there was a drainage ditch and just beyond that there was a terrace about 12 or 14 inches high; that the land behind the school building was higher than the land where the mower was being operated; that the chase began behind the school building and proceeded in the general direction in which the mower was being operated, although somewhat to the rear thereof; that the grass being cut by the mower at said time was high but did not conceal the mower or the operator thereof; that the infant plaintiff and his two companions crossed the circular driveway, went over the drainage ditch and terrace and came in on the right side of said mower; that the mower was then about 40 or 50 feet from the terrace; that the infant plaintiff had heard the noise made by the mower in operation but did not see the mower until he was about three feet from it; that he then attempted

to make a right turn to avoid colliding with the front end of said mower, and as he did so his right foot slipped on the grass and slid under the right end of said mower, coming in contact with its revolving rotary blade, thereby causing the injury to his said foot herein complained of; and that George Lindsay Adams was falling when Eugene Evans first saw him.

"5. That it was customary for the pupils to play on the playgrounds of Sumner School at the time herein complained of, and that Eugene Evans was aware of that fact.

"6. That at the time of said accident, the infant plaintiff was an average boy, having the normal capacity and experience of a child of his age.

"7. That as a result of said accident above described, the infant plaintiff was caused to suffer great bodily pain and mental anguish; that he was hospitalized for 7 or 8 days and was thereafter treated for his injury for a number of months; that he wore a cast on his injured foot for two or three months; that said injury did not reach the end of its healing period until approximately one year after said accident; that he suffered a 35 per cent permanent physical disability to said foot; and that by reason of said accident, the infant plaintiff, George Lindsay Adams, has been damaged in the total amount of $2500.00.

"8. That as herein set forth, Eugene Evans, while acting within the scope of his employment, was negligent, and such negligence was one of the proximate causes of said accident and the resulting damages suffered by the infant plaintiff.

"9. That as herein set forth, the infant plaintiff, George Lindsay Adams, was negligent, and such negligence was one of the proximate causes of said accident and the resulting damages suffered by him."

The hearing Commissioner made conclusions of law in pertinent part as follows:

"1. That Eugene Evans, janitor for the Sumner School, while acting within the scope of his employment was negligent in operating the power lawn mower, with the guard removed therefrom, on the playground area of said school at the time and under the circumstances herein described, and such negligence was one of the proximate causes of said accident and the resulting damages suffered by the infant plaintiff." . . .

"2. That the infant plaintiff, George Lindsay Adams, was negligent in failing to keep a proper lookout so he could observe said lawn mower *after he had been warned of its presence by the noise of its motor,* and in failing to reduce the speed at which he was running at the time and under the circumstances herein described, and that such

negligence was one of the proximate causes of said accident and the resulting damages suffered by him." . . . (Italics added.)

"3. That notwithstanding the negligence of Eugene Evans, the janitor for Sumner School, the plaintiff is not entitled to recover herein, in that George Lindsay Adams' contributory negligence was likewise a proximate cause of the accident giving rise hereto and the resulting damages suffered by him, and such contributory negligence is fatal to plaintiff's claim." . . .

"In view of the decision reached in this case, it becomes unnecessary to decide the question as to whether Eugene Evans was a State employee or a County employee at the time herein complained of."

Based upon the foregoing findings of fact and conclusions of law, the hearing Commissioner entered an order denying the plaintiff's claim against the defendant and taxing the plaintiff with the costs.

The plaintiff appealed to the Full Commission, where all the findings, conclusions, and the order of the hearing Commissioner were adopted and affirmed.

From this decision the plaintiff appealed to the Superior Court. There the court on review of the plaintiff's exceptions and assignments of error and after hearing the arguments of counsel, concluded that "the Findings of Fact made by the Full Commission are supported by competent evidence and are correct, except for that portion of the Findings of Fact which finds the plaintiff minor guilty of contributory negligence, and that the Conclusions of Law of the Full Commission based upon said Findings of Fact are correct, except that portion of the Conclusions of Law which finds the plaintiff minor guilty of contributory negligence and that the said award of the Full North Carolina Industrial Commission denying the plaintiff compensation on the ground that he was guilty of contributory negligence should be reversed, . . ." Whereupon judgment was entered in accordance with the foregoing conclusions. The decree points out and sustains such of the plaintiff's exceptions and assignments of error as the court deemed necessary to eliminate the Commission's findings and conclusions as to contributory negligence of the plaintiff. The judgment further decrees that the cause be remanded to the North Carolina Industrial Commission for findings as to whether the school janitor, Eugene Evans, was a State employee at the time of the injury sustained by the plaintiff, with further direction that no costs be taxed against the plaintiff.

The defendant excepted to the judgment as entered and appealed to this Court.

*Attorney General Patton, Assistant Attorney General Love, and Charles D. Barham, Staff Attorney, for the defendant, appellant.*
*Smith, Moore, Smith, Schell & Hunter for plaintiff, appellee.*

JOHNSON, J.　The Tort Claims Act provides that "the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. . . ." G.S. 143-293; *Bradshaw v. Board of Education,* 244 N.C. 393, 93 S.E. 2d 434.

Necessarily, then, decision turns on whether there is any competent evidence to support the Industrial Commission's finding and conclusion that the plaintiff was contributorily negligent in bar of recovery.

The question thus posed requires a recurrence to these fundamental principles of law: Contributory negligence is such an act or omission on the part of the plaintiff amounting to a want of ordinary care concurring and cooperating with some negligent act or omission on the part of the defendant as makes the act or omission of the plaintiff a proximate cause or occasion of the injury complained of. *Moore v. Iron Works,* 183 N.C. 438, 111 S.E. 776; *Elder v. R. R.,* 194 N.C. 617, 140 S.E. 298; *Wall v. Asheville,* 219 N.C. 163, 13 S.E. 2d 260; *Holderfield v. Trucking Co.,* 232 N.C. 623, 61 S.E. 2d 904. Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed. *Hall v. Coble Dairies,* 234 N.C. 206, bot. p. 214, 67 S.E. 2d 63, 68; *McIntyre v. Elevator Co.,* 230 N.C. 539, 54 S. E. 2d 45; *Ellis v. Refining Co.,* 214 N.C. 388, 199 S.E. 403. It is essential that in order to establish contributory negligence, the defendant must show negligence on the part of the plaintiff as a proximate cause of the injury. *Brewster v. Elizabeth City,* 137 N.C. 392, 49 S.E. 885; *Construction Co. v. R. R.,* 184 N.C. 179, 113 S.E. 672; *Construction Co. v. R. R.,* 185 N.C. 43, 116 S.E. 3; *Davis v. Jeffreys,* 197 N.C. 712, 150 S.E. 488; *Stephenson v Leonard,* 208 N.C. 451, 181 S.E. 261. There fore, the negligence of the plaintiff and its proximate cause must concur and be proved by the defendant, and a failure to establish proximate cause, although negligence be proved, is fatal to the plea. *Brewster v. Elizabeth City, supra.*

The rule obtains in this jurisdiction that in determining whether a child is contributorily negligent in any given situation a *prima facie* presumption exists that an infant between the ages of seven and fourteen is incapable of contributory negligence, but the presumption may

be overcome. The test in determining whether the child is contributorily negligent is whether it acted as a child of its age, capacity, discretion, knowledge and experience would ordinarily have acted under similar circumstances. *Caudle v. R. R.*, 202 N.C. 404, 163 S.E. 122. See also *Walston v. Greene*, 247 N.C. 693, 102 S.E. 124; Annotations: 107 A. L. R. 4; 174 A. L. R. 1080.

In *Rolin v. Tobacco Co.*, 141 N.C. 300, 314, 53 S.E. 891, the Court said in speaking to the question of contributory negligence respecting an eleven year old boy who was injured while at work: "Within certain ages, courts hold children incapable of contributory negligence. We do not find any case, nor do we think it sound doctrine, to say that a child of twelve years comes within that class. Adopting the standard of the law in respect to criminal liability, we think that a child under twelve years of age is presumed to be incapable of so understanding and appreciating danger from the negligent act, or conditions produced by others, as to make him guilty of contributory negligence. Mr. Labatt says: 'The essential and controlling conception by which a minor's right of action is determined with reference to the existence or absence of contributing fault, is the measure of his responsibility. If he has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposes himself to danger. For the exercise of such measure of capacity and discretion as he possesses, he is responsible.' . . . 'Between seven and fourteen a child is *prima facie* incapable of exercising judgment and discretion, but evidence may be received to show capacity.' *T. C. & C. Co. v. Enslen*, 129 Ala., 336, 346. . . .

"In regard to the alleged contributory negligence of the plaintiff, he should have instructed the jury in accordance with the principles announced by the authorities herein cited. The jury could take into consideration the age, intelligence and knowledge of the plaintiff in regard to the machine and his capacity to know and appreciate the danger."

In *Hollingsworth v. Burns*, 210 N.C. 40, 185 S.E. 476, a boy of twelve skating in the street was hit by a car which admittedly was being operated in a negligent manner. Devin, J. (later C. J.), speaking for the Court, said: "Here the plaintiff was just twelve years of age and was engaged with other boys in a childish game, on roller skates, on or near a connecting street which was ordinarily not much used. . . .

"The courts recognize that the love of play is instinctive in childhood, and that children may be expected to act as children and upon childish impulses. One who possessed profound knowledge of the characteristics of human conduct said, long ago: 'When I was a

child, I spake as a child, I understood as a child, I thought as a child: but when I became a man, I put away childish things.' I Cor. 13-11. The law wisely takes into consideration the fact that a small boy will have only the understanding and the thought of a child, not that of a man."

The Commission's conclusory-finding that the plaintiff is barred of recovery by his own negligence is predicated on these inferences deduced from the plaintiff's evidence:

"That the infant plaintiff, George Lindsay Adams, was negligent in failing to keep a proper lookout so he could observe said lawn mower *after he had been warned of its presence by the noise of its motor*, and in failing to reduce the speed at which he was running at the time and under the circumstances herein described, and that such negligence was one of the proximate causes of said accident and the resulting damages suffered by him." (Italics added.)

It thus appears that the two elements of negligence found against the plaintiff, namely, failure to keep a proper lookout and failure to slow down, are predicated on the finding that the plaintiff failed to take timely heed of the noise made by the motor. In so limiting the elements of negligence found against the plaintiff, the Commission appears to have understood and made allowance for these basic features of the game of chase: that the chief objective of the person being chased is to avoid being caught or tagged by his pursuer, and that much of the strategy of the one pursued, especially when about to be caught, is to elude his pursuer by dodging, shifting, or sidestepping; and that the game requires the person chased to do much of his top speed running while looking back, with eyes on his pursuer, so as to be prepared to dodge and shift when about to be tagged. Therefore, since the Commission has limited the elements of negligence found against the plaintiff to failure to keep a proper lookout and reduce speed after being warned of the presence of the mower by the noise of its motor, the pivotal question for decision is: May negligence as a proximate cause of the plaintiff's injury be inferred from the plaintiff's failure to give earlier heed to the sound of the motor by turning sooner to avoid contact with the mower?

The only finding of the Commission as to how much noise the motor made is as follows: It "made the noise of a small motorcycle." This finding is based on the testimony of witness Evans, who was operating the mower. He testified as follows: "The motor makes much noise. It is a two-cylinder motor and makes almost as much fuss as one of those small motorcycles." No one testified as to how far the motor could be heard. William Paskhal testified: "I was behind them

17 — 248

(the plaintiff and Jimmy Hamilton) when George (the plaintiff) tried to cut around the lawn mower. I could hear the lawn mower but I was not paying attention to it. I reckon the lawn mower was three or four feet from George when George cut to his right. That is the first time I saw the lawn mower." The plaintiff testified as follows on cross-examination: "I really don't know why I didn't hear the lawn mower before I got that close to it. I was running with two other boys and I didn't see the lawn mower until I was about three feet away. I don't know why I was that close to the lawn mower before I saw it. I heard the lawn mower but I just didn't see it." It thus appears that the evidence, as well as the conclusory-finding of the Commission, is indefinite and speculative in respect to how much noise the motor made and how far it could be heard under existing conditions.

In further considering the question whether contributory negligence may be inferred from the plaintiff's failure to attempt to turn sooner from his course, in heed of the noise of the motor, these additional factors disclosed by the evidence appear to be relevant:

1. The plaintiff and his companions, William Paskhal and Jimmy Hamilton, were at play on the school playground during a regular play period, when the lawn mower was not supposed to be in operation. It was the practice of the school janitor to mow the grass on the playground only when the children were attending classes, and not to mow while they were at play. The janitor knew that some of the children came to school early, as did the plaintiff and his companions on this particular morning, and engaged in play before the first bell rang in the mornings. On the morning in question, because the weather had been hot and dry and the grass was tough, the janitor, contrary to his usual practice, said he took the machine out on the playground to mow while the dew was on the grass.

2. When the boys came out of the school building to begin their game of chase, they started near the circular driveway back of the school building. The playground lay out in front of them. The ground sloped downhill to a drain ditch. Beyond the ditch the ground sloped up and over a mound or terrace. The janitor was over behind the terrace operating the power mower. The plaintiff took the lead. He was followed first by William Paskhal and then by Jimmy Hamilton. When they crossed the ditch and approached the terrace, the plaintiff was still in front, closely followed by William, but all three were close together. The uncontradicted testimony of all the boys is that they did not see the power mower until after they passed over the terrace. The Commission found on the testimony of witness Evans that he was operating the mower about 40 or 50 feet beyond the terrace. He

was sitting on the trailer. Jimmy Hamilton said as he approached the terrace he could see only the janitor's head "over the mound or hill." The plaintiff said that after crossing the ditch "the only thing he saw was the janitor." Operator Evans said: "The first time that I saw George (the plaintiff) he was falling under the machine. . . . I didn't see the other boys until they all piled up. . . . If I had been looking in their direction I probably would have seen them; but I was looking in the direction to which I had started. I was looking straight ahead where I was mowing."

3. The evidence tends to show that the chase had reached high pitch when the boys approached and went over the terrace near where the mower was in operation. It is inferable that the plaintiff was about to be caught. All three boys were within three or four steps of each other. Their natural excitement at this stage of the game made them less heedful of outside noises, and furnishes plausible explanation why the plaintiff was close upon the mower before he attempted to turn and avoid colliding with it.

4. The plaintiff did not run into or trip over the mower. On the contrary, he slipped on the wet grass and skidded into the revolving blade. All the evidence tends to show that after crossing the terrace, the plaintiff approached the mower at an angle from the side and rear. Suddenly finding himself close to the machine, he attempted to shift around from the side toward the front, and in doing so his foot slipped on the grass and he slid into the front side of the mower, coming into contact with the revolving blade. The plaintiff testified in part: "The first time I saw the lawn mower we were close to it. *I glanced over there and saw it,* and I whirled around. . . . I had seen the lawn mower before, *but I don't know what condition it was in.* I turned to my right after I first saw the lawn mower about three feet away from me to get back up the hill and out of its way. The grass was wet; my foot slipped and the lawn mower was on top of my foot. The grass there was about two and a half feet high." (Italics added). It is noted that the Commission found that the grass "was high but did not conceal the mower or the operator thereof." Further explanation by the plaintiff on cross-examination: "I saw it and then turned to my right. When I turned to my right, my foot slid out from under me. I approached the lawn mower from the side. . . . After I saw it, I turned to my right. The grass was slick and I slid. That was when my ankle got caught in the blade."

Jimmy Hamilton testified in part: "I was behind George, and George fell over and we fell on top of him. . . . We sort of came together at right angles, I guess. . . .We fell over George and not on the lawn mower."

This line of testimony, showing that the plaintiff slid into the machine after slipping in the tall wet grass, tends to minimize further the probative force of the evidence relied on by the defendant to show negligence on the part of the plaintiff. It also brings into bold relief, as bearing further on the question of proximate cause, the element of negligence on the part of the defendant's janitor in operating the mower with the revolving blade completely exposed. He said he was operating the machine for the first or second time with the whirlwind rotary blade exposed, without the protective metal guard that fitted over the top and front of the blade. He said the safety guard which was left off "keeps the machine from throwing things out and *it keeps things from coming into contact with the blade from the outside."* (Italics added.)

The plaintiff and his playmates had no notice or knowledge of the dangerous, exposed condition in which the lawn mower was being operated. Moreover, it is inferable that if the plaintiff's pivot foot had not slipped on the wet grass, he would have made his turn in safety. This being so, can it be said that in failing to heed the noise of the motor and turn sooner, the plaintiff, eleven year old boy, should have reasonably foreseen injurious results? We think not.

Under all the attending circumstances, we conclude that negligence as a proximate cause of the plaintiff's injury may not be predicated upon or inferred from his conduct as disclosed by the evidence in this case.

In this view of the case it is immaterial that the judgment entered below indicates that the court overruled the Commission's findings, (1) that the high grass failed to obscure the mower from the vision of the approaching plaintiff, and (2) that the plaintiff was an average boy having normal capacity and experience of a child of his age. Conceding, without deciding, that these findings are supported by the evidence, even so, the opinion prevails that the evidence here is insufficient to support the finding and conclusion that the plaintiff by his own negligence is barred of recovery. The court below correctly so held. The judgment entered is free of prejudicial error and will be upheld.

Affirmed.