JOHN GLEN TAYLOR AND WIFE, NADA TAYLOR v. DOROTHY WALKER, AND
C&R AMUSEMENTS, D/B/A BJ'S LOUNGE

No. 8618SC736

(Filed 3 March 1987)

**Negligence § 35.1— plaintiff injured after altercation in bar—contributory negligence as matter of law**

   Plaintiff's own conduct so clearly contributed as at least one of the proximate causes of his injury that he was barred as a matter of law from any recovery based upon the alleged negligent operation of a bar by defendants where plaintiff had knowledge at least equal to that of defendants of the violent nature of other patrons and of the volatile atmosphere present in the bar when he confronted one of the patrons over the shoving of plaintiff's brother-in-law; with that knowledge plaintiff confronted the patron and invited him outside to fight; when the patron refused plaintiff continued to stand beside him, repeating the invitation, even though he could have left; the potential for danger and physical harm inherent in the confrontation with the patron was as well known to plaintiff as to defendants, but with such knowledge plaintiff exposed himself to the danger by approaching the patron, engaging in a heated verbal exchange, and delivering the first and only blow; it was foreseeable to plaintiff that his physical attack on the patron would provoke a violent response from the patron's companions; and plaintiff clearly violated his duty not to expose himself needlessly to danger.

      Judge WELLS dissenting.

   APPEAL by plaintiffs from *Albright, Judge.* Judgment entered 7 February 1986 in Superior Court, GUILFORD County. Heard in the Court of Appeals 16 December 1986.

   On 19 December 1981, John Glen Taylor was shot and seriously wounded by an unknown assailant outside BJ's Lounge, a Greensboro bar. The shooting occurred shortly after Taylor had been involved in an altercation with another patron of the bar, and as Taylor, his wife, Nada, and his brother-in-law, Victor Huffman, were attempting to reach their automobile in the bar's parking lot. Plaintiffs brought this suit to recover for John Glen Taylor's personal injuries and Nada Taylor's loss of consortium with her husband.

   In their complaint, plaintiffs alleged that the bar was operated by C & R Amusements and that defendant Walker was the bartender and manager of the establishment at the time of the shooting. Plaintiffs alleged that defendants were negligent in

that they violated several administrative regulations promulgated by the State Board of Alcoholic Control (now North Carolina Alcoholic Beverage Control Commission) for the control of alcoholic beverage sales and the protection of the public, as well as common law duties to protect patrons from the criminal acts of third persons, and that such negligence was a proximate cause of John Glen Taylor's injuries.

Defendants answered, denying negligence and alleging as an affirmative defense that John Glen Taylor, by his own conduct at the bar, was contributorily negligent in bringing about the situation which resulted in his injury. A jury answered the issues of negligence and contributory negligence in favor of John Glen Taylor and awarded compensatory damages of $382,400. The jury answered the issue of loss of consortium unfavorably to Nada Taylor.

The trial court allowed defendants' motion for judgment notwithstanding the verdict, concluding that John Glen Taylor was contributorily negligent as a matter of law. Plaintiffs appeal.

*Gabriel, Berry, Weston & Weeks, by M. Douglas Berry for plaintiff-appellant.*

*Craige, Brawley, Lipfert & Ross, by William W. Walker for defendants-appellees.*

MARTIN, Judge.

Although both plaintiffs gave notice of appeal, the only assignments of error contained in the record and brought forward in the brief relate to the granting of defendants' motion for judgment notwithstanding the verdict with respect to the claim of John Glen Taylor. Therefore, we conclude that Nada Taylor has abandoned her appeal. App. R. 10, 28.

Defendants have moved, pursuant to App. R. 13(c), to dismiss the appeal for plaintiff-appellant's failure to timely file and serve his brief; plaintiff-appellant has moved, pursuant to App. R. 27(c), for a three-day extension of time within which to file the brief. Plaintiff's motion is allowed; defendant's motion is denied.

No question is raised on appeal as to the sufficiency of the evidence to support the jury finding that negligence on the part

of the bar's owner and manager was a proximate cause of John Glen Taylor's injuries. We do not, therefore, consider that issue. The only question before us is whether John Glen Taylor's recovery is, as a matter of law, barred by his contributory negligence. We conclude that it is and affirm the trial court's entry of judgment notwithstanding the verdict.

A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the legal sufficiency of the evidence to take the case to the jury. *Everhart v. LeBrun*, 52 N.C. App. 139, 277 S.E. 2d 816 (1981). In ruling on the motion, the court must consider the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences to be drawn therefrom and resolving all conflicts in the evidence in his favor. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E. 2d 333 (1985). When, as in the present case, defendants' motion for judgment notwithstanding the verdict is grounded upon plaintiffs' contributory negligence as a matter of law, the motion should be granted only when the contributory negligence is so clearly established that no other reasonable inference may be drawn from the evidence. *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 279 S.E. 2d 559 (1981).

Viewed in the light most favorable to plaintiff, the evidence tended to show that plaintiff, his wife Nada, and Nada's brother, Victor Huffman, went to BJ's Lounge at approximately 9:00 p.m. on 18 December 1981. They sat with friends, talking and drinking beer. Plaintiff noticed a group of men, described by him as "Indians," in the poolroom at the back of the lounge. Plaintiff testified that these men had reputations as "guntoters and knifetoters" and for engaging in fights. He testified that he knew of the bar formerly frequented by these men, and that he knew, prior to 18 December 1981, that they had begun to frequent BJ's Lounge. He was also aware that BJ's Lounge did not employ a "bouncer" or security guard.

After plaintiff had been at the lounge for approximately 45 minutes, he observed one of these men, Bear Suits, chase another man from the back of the lounge and around behind the bar. Suits and defendant Walker, who was the bartender, beat the man about the head and shoulders. Walker then ordered the man to leave the lounge, but permitted Suits to remain. Suits was very

intoxicated. Plaintiff knew Suits and knew that he had a reputation for carrying a gun.

As the evening progressed, the atmosphere in BJ's Lounge grew louder and more "rowdy." Due to the situation, the friends with whom plaintiff had been sitting began to leave, a few at a time, to go to a different lounge. By about 12:30, plaintiff, his wife, and Victor Huffman were the only ones remaining at BJ's Lounge, other than defendant Walker and the group of men, including Bear Suits.

Plaintiff went to the restroom and when he returned he saw Bear Suits shove Victor Huffman, who, according to the evidence, suffers from some mental disability. Plaintiff went over to Suits and told Suits that "Victor wasn't right mentally, and if he said anything to you, just overlook it." Suits laughed at plaintiff and suggested that he "take up" Huffman's fight. Plaintiff responded, "if that's the way it's going to be, we'll just go outside." Suits continued to laugh at plaintiff, but declined to go outside. This exchange continued for several minutes and then Suits dropped his hand from the bar. Thinking that Suits was probably reaching for a gun, plaintiff struck Suits with his fist, knocking him off the bar stool and onto the floor unconscious. A crowd quickly gathered around Suits. Plaintiff saw a pistol on the floor where Suits had fallen and picked it up. One of the men in the crowd reached into his pocket, but defendant Walker intervened and positioned herself between the man and plaintiff. While holding the pistol, plaintiff made sure that his wife and Victor Huffman got out of the lounge safely and then he backed out the door. As he was attempting to reach his car, he was struck by a shot which was apparently fired from the door of BJ's Lounge.

It is well established in this State that a plaintiff's claim will be barred by the doctrine of contributory negligence when he fails to exercise ordinary care for his own safety, and such failure, concurring with the actionable negligence of the defendant, contributes to his injury. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E. 2d 504 (1980). Contributory negligence is

> an act or omission on the part of the plaintiff amounting to a want of ordinary care concurring and cooperating with some negligent act or omission on the part of the defendant as

makes the act or omission of the plaintiff a proximate cause or occasion of the injury complained of.

*Adams v. Board of Education,* 248 N.C. 506, 511, 103 S.E. 2d 854, 857 (1958). The existence of contributory negligence does not depend upon the plaintiff's subjective appreciation of danger; the standard of ordinary care is applied objectively such that the plaintiff is held to that level of care which an ordinarily prudent person would exercise to avoid injury in the same or similar circumstances. *Allen v. Pullen,* 82 N.C. App. 61, 345 S.E. 2d 469 (1986), *disc. rev. denied,* 318 N.C. 691, 351 S.E. 2d 738 (1987). When a person deliberately exposes himself to a danger of which he is, or in the exercise of reasonable care should be, aware, he is contributorily negligent as a matter of law. *Burgess v. Mattox,* 260 N.C. 305, 132 S.E. 2d 577 (1963).

Applying these principles to the present case, we conclude that plaintiff's own conduct so clearly contributed as at least one of the proximate causes of his injury that he is barred as a matter of law from any recovery based upon the alleged negligent operation of the bar by defendants. Plaintiff had knowledge at least equal to that of defendants of the violent nature of Suits and his companions and of the volatile atmosphere present in the bar when he confronted Suits over the shoving of Huffman. With that knowledge, plaintiff confronted Suits and invited him outside to fight. When Suits refused, plaintiff continued to stand beside him, repeating the invitation, even though he could have left. The potential for danger and physical harm inherent in the confrontation with Suits was as well known to plaintiff as to defendants, yet, with such knowledge, plaintiff exposed himself to the danger by approaching Suits, engaging in a heated verbal exchange and delivering the first, and only, blow. It was certainly foreseeable to plaintiff that his physical attack on Suits would provoke a violent response from Suits' companions. Plaintiff had a duty not to needlessly expose himself to danger, which he clearly violated in this case. *See Witherspoon v. Owen,* 251 N.C. 169, 110 S.E. 2d 830 (1959). Moreover, plaintiff voluntarily participated in the affray, thereby helping to create the situation from which his injuries arose. It is elementary that one may not recover damages for injuries resulting from a hazard he helped to create. *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549 (1956); *Blake v. Great Atlan-*

*tic & Pacific Tea Co.*, 237 N.C. 730, 75 S.E. 2d 921 (1953). The trial court's entry of judgment notwithstanding the verdict is affirmed.

Affirmed.

Judge PARKER concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

I cannot agree that it can be said as a matter of law that plaintiff John Glen Taylor (Taylor) acted unreasonably in failing to anticipate the violent and unlawful conduct which resulted in his injury. In my opinion, reasonable minds might differ as to whether Taylor needlessly exposed himself to the type of danger which led to his injury, and therefore the question of Taylor's contributory negligence was correctly submitted to the jury.

For the reasons stated, I vote to reverse the trial court and to order that judgment for Taylor be entered on the jury's verdict.