JOHN GLEN TAYLOR AND WIFE, NADA TAYLOR v. DOROTHY WALKER, AND C&R AMUSEMENTS, D/B/A BJ'S LOUNGE

No. 161A87

(Filed 7 October 1987)

**Negligence § 35.2— barroom altercation—plaintiff not contributorily negligent as matter of law**

In a negligence action against the owners of a bar arising from a fight inside the bar and a shooting outside, the trial court erred by allowing defend-

ants' motion for judgment n.o.v. on the grounds that plaintiff was contributorily negligent as a matter of law where the evidence was in conflict as to whether plaintiff exercised ordinary care for his own safety under the circumstances then existing and whether any alleged failure to do so on his part was the proximate cause of his injuries. The evidence was contradictory as to whether plaintiff himself was intoxicated, whether there was any compelling reason for him to leave the bar any sooner than he in fact did, and whether it was reasonable under the circumstances to suddenly strike another patron, and there was no direct evidence whatsoever that the shot which struck plaintiff was fired either by that patron or any of his friends.

Justice WEBB dissenting.

APPEAL by plaintiff John Glen Taylor pursuant to N.C.G.S. § 7A-30(2) and Rule 14 of the North Carolina Rules of Appellate Procedure from the decision of a divided panel of the Court of Appeals. That decision affirmed the trial judge's order allowing defendants' motion for judgment notwithstanding the verdict at the 3 February session of Superior Court, GUILFORD County, *Albright, J.*, presiding. *Taylor v. Walker*, 84 N.C. App. 507, 353 S.E. 2d 239 (1987). Heard in the Supreme Court 9 September 1987.

*Gabriel, Berry, Weston & Weeks, by M. Douglas Berry, for plaintiff-appellant John Glen Taylor.*

*Craige, Brawley, Lüpfert & Ross, by William W. Walker, for defendant-appellees.*

MEYER, Justice.

The issue presented in this case is whether the trial court erred when it granted defendants' motion for judgment notwithstanding the verdict on the ground that plaintiff John Glen Taylor was contributorily negligent as a matter of law. The Court of Appeals, concluding that plaintiffs' claim against defendants was indeed barred as a matter of law by Taylor's own contributory negligence, held that the trial court did not err and affirmed its order accordingly. Because we find that the Court of Appeals misapplied the standard under our law for deciding the merits of a motion for judgment notwithstanding the verdict, we reverse and remand for entry of a judgment for plaintiff John Glen Taylor on the jury's original verdict.

The evidence presented at trial tended to show the following. Plaintiff John Taylor, his wife, Nada, and Nada's brother, Victor

Huffman, went to BJ's Lounge in Greensboro, North Carolina, between 8:30 p.m. and 9:00 p.m. on Friday, 18 December 1981. BJ's Lounge was then owned by defendant C&R Amusements, Inc. The other defendant, Dorothy Walker, was the bartender and manager on that night.

Evidence revealed that BJ's Lounge was truly not a place for the faint of heart. The bar had a history of general roughhousing, fights, and knifings. In fact, during the eighteen months immediately preceding the incident which spawned this lawsuit, thirty-three calls were made to the Greensboro Police Department concerning incidents at BJ's Lounge. These included eleven assault calls, twelve investigative calls, five disturbance calls, three liquor violation calls, and one call each for traffic and sexual offense violations.

On the night in question, Taylor and his party went into BJ's Lounge and sat with friends in the front section of the bar. Taylor noticed that there was a group of fifteen to twenty "Indians" in the lounge's back poolroom. He knew that these men, who were regular patrons of the lounge, often carried guns or knives and that they often started fights when assembled in large groups. Taylor also knew that BJ's Lounge did not employ a bouncer and that defendant Dorothy Walker was the only employee on the premises that night.

At approximately 9:30 p.m., Taylor saw an Indian named Bear Suits chase another patron out of the lounge's poolroom and into the front section of the bar. Apparently with the help of Dorothy Walker, Bear Suits lifted the smaller patron onto the bar and beat him about the head and shoulders. Walker expelled the beaten patron from BJ's Lounge, but allowed Suits to remain.

Taylor was familiar with Bear Suits and was aware of his reputation for carrying a gun. He also knew that Bear Suits had been drinking that night while at BJ's Lounge. After witnessing this incident, Taylor remarked to his wife, Nada, that Suits was going to cause somebody some trouble that night.

Following the incident, the "Indians" in the lounge's poolroom became louder and more rowdy. Taylor's friends began leaving, telling Taylor as they departed that they did not like the atmosphere or the people remaining in the bar. At about 12:30

a.m., after all of their friends had departed, Taylor, Nada, and Victor prepared to leave BJ's Lounge for the evening. Taylor and Nada went to the lounge's bathroom while Victor waited in the front section of the bar.

As Taylor was returning from the bathroom, he saw Bear Suits push Victor. Taylor approached Bear Suits, telling him that Victor was mentally retarded and that Suits should therefore just ignore him. Suits, who was quite drunk at this point in the evening, responded that he did not want an apology and told Taylor, "Why don't you just take it up." Taylor challenged Suits to go outside and fight, but Suits laughed at him and refused. The verbal exchange between Taylor and Suits continued for several minutes.

At a certain point in the exchange, Suits slipped his hands off the bar and appeared to be reaching for his back pocket. Suspecting that Suits was reaching for a gun or a knife, Taylor struck Suits in the face, knocking him onto the floor unconscious. Taylor testified that he then reached down and picked up a gun off the floor near Suits' fallen body.

Hearing the commotion, many of the "Indians" who had been in the lounge's poolroom began to move toward Taylor, Nada, and Victor. Gun poised, Taylor backed out the front door of BJ's Lounge, allowing Nada and Victor to retreat ahead of him. As Taylor was preparing to get into his car in the parking lot, an unknown person fired two gunshots from the bar's doorway. Taylor was struck in the head and seriously injured.

In their complaint, plaintiffs alleged that BJ's Lounge was operated by C&R Amusements and that defendant Walker was the bartender and manager of the establishment at the time of the shooting. Plaintiffs also alleged that defendants were negligent in that they violated several administrative regulations promulgated by the then State Board of Alcohol Control (now the North Carolina Alcoholic Beverage Control Commission) for the control of alcoholic beverage sales and the protection of the public. Plaintiffs further alleged that defendants were negligent in that they violated their common law duty to protect patrons from the criminal acts of third persons. They alleged finally that defendants' negligence was the proximate cause of Taylor's injuries.

Defendants answered, denying any negligence and alleging as an affirmative defense that Taylor, by his own conduct on the night in question, was contributorily negligent in bringing about his own injuries. At the close of all the evidence, defendants moved for a directed verdict and that motion was denied. The jury answered the issues submitted to it to the effect that plaintiff Taylor was injured by the negligence of defendant and that he was not contributorily negligent. Accordingly, the jury awarded him compensatory damages of $382,400. The trial court then allowed defendants' motion for judgment notwithstanding the verdict on the ground that Taylor was contributorily negligent as a matter of law.

No question was raised on the appeal to the Court of Appeals as to the sufficiency of the evidence to support the jury finding that negligence on the part of defendants was a proximate cause of Taylor's injuries incurred as a result of being shot. The only question there, and here, is whether Taylor's recovery is, as a matter of law, barred by his contributory negligence. The Court of Appeals concluded that it was. We disagree.

A motion for judgment notwithstanding the verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure is essentially a renewal of an earlier motion for a directed verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E. 2d 333 (1985). By making such a motion, the moving party asks that judgment be entered in accordance with his previous motion for directed verdict, notwithstanding the contrary verdict actually rendered by the jury. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). The test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is identical to that applied when ruling on a motion for directed verdict. *Smith v. Price*, 315 N.C. 523, 340 S.E. 2d 408 (1986); *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549.

The party moving for judgment notwithstanding the verdict, like the party seeking a directed verdict, bears a heavy burden under North Carolina law. Both motions ask whether the evidence presented at trial is legally sufficient to take the case to the jury. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977); *Investment Properties of Asheville v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1971). In ruling on the motion, the trial court

must consider the evidence in the light most favorable to the non-moving party, giving him the benefit of all reasonable inferences to be drawn therefrom and resolving all conflicts in the evidence in his favor. *Smith v. Price*, 315 N.C. 523, 340 S.E. 2d 408; *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E. 2d 333; *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678. Ordinarily, such a judgment is not proper unless it appears as a matter of law that a recovery simply cannot be had by plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678.

The heavy burden carried by the movant is particularly significant in cases, such as the one before us, in which the principal issues are negligence and contributory negligence. Only in exceptional cases is it proper to enter a directed verdict or a judgment notwithstanding the verdict against a plaintiff in a negligence case. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979); *Millikan v. Guilford Mills, Inc.*, 70 N.C. App. 705, 320 S.E. 2d 909 (1984), *cert. denied*, 312 N.C. 798, 325 S.E. 2d 631 (1985). Issues arising in negligence cases are ordinarily not susceptible of summary adjudication because application of the prudent man test, or any other applicable standard of care, is generally for the jury. *King v. Allred*, 309 N.C. 113, 305 S.E. 2d 554 (1983), *appeal after remand*, 76 N.C. App. 427, 333 S.E. 2d 758 (1985), *disc. rev. denied*, 315 N.C. 184, 337 S.E. 2d 857 (1986); *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979). Greater judicial caution is therefore called for in actions alleging negligence as a basis for plaintiff's recovery or, in the alternative, asserting contributory negligence as a bar to that recovery. *See Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255; *Gladstein v. South Square Assoc.*, 39 N.C. App. 171, 249 S.E. 2d 827 (1978), *cert. denied*, 296 N.C. 636, 254 S.E. 2d 178 (1979).

Applying these principles to the present case, we conclude that the trial court erred in allowing defendants' motion for judgment notwithstanding the verdict on the ground that Taylor was contributorily negligent as a matter of law. We are unable to say that plaintiff cannot possibly have a recovery upon any reasonable reading of the facts as established by the evidence in this case. The issue, after all, is not whether Taylor chose the best or wisest alternative in remaining in the bar that night and in even-

tually becoming involved in the altercation with the drunken and belligerent Bear Suits. He most certainly did not. The true issue is whether there is evidence that, if believed, would support an inference that he acted reasonably under admittedly difficult circumstances. We think there is and we so hold.

This is not to say that when one deliberately exposes himself to a danger of which he is, or in the exercise of reasonable care should be, aware, the trial court cannot declare his doing so to be contributory negligence as a matter of law. *Burgess v. Mattox*, 260 N.C. 305, 132 S.E. 2d 577 (1963). For instance, we approved of summary adjudication on grounds of contributory negligence as a matter of law in the case of *Dendy v. Watkins*, 288 N.C. 447, 219 S.E. 2d 214 (1975). There, plaintiff pedestrian sought in his action to recover for injuries sustained when he was struck by defendant motorist's car. Plaintiff attempted to cross the three southbound lanes of a major thoroughfare in Fayetteville, North Carolina, at 5:00 p.m. in the afternoon. He did so in the middle of the block at a place that was neither a marked nor an unmarked crosswalk. Moreover, he crossed at a forty-five degree angle, slipping between cars which were momentarily stopped in the first two lanes. He was struck by defendant's vehicle when he unsuccessfully tried to navigate the third lane of moving traffic. Plaintiff had an unobstructed view of one-half mile in the relevant direction, and defendant was traveling at only thirty miles per hour. We held that, because plaintiff was contributorily negligent as a matter of law on those facts, the trial court was correct to remove the case from the jury's consideration. *Id.* at 457, 219 S.E. 2d at 220.

The wisdom of our cautious approach to the removal of negligence issues from the jury's consideration is particularly apparent in the context of the case before us. Here, the evidence is in conflict with respect to the central question of the case—whether Taylor exercised ordinary care for his own safety under the circumstances then existing and whether any alleged failure to do so on his part was the proximate cause of his injuries. As to plaintiff's alleged acts of contributory negligence, the evidence is contradictory as to whether Taylor himself was intoxicated, whether there was any compelling reason for him to leave the bar any sooner than he in fact did, and whether it was reasonable under the circumstances to suddenly strike Bear Suits. As to proximate

cause, there was no direct evidence whatsoever that the shot which struck plaintiff was fired by either Bear Suits or any of his friends. Any such conclusion is mere speculation. These issues, and their resolution, were better left to the jury, and the trial court therefore erred in allowing defendants' motion for judgment notwithstanding the verdict.

For the reasons stated, we hold that the trial court erred in allowing defendants' motion for judgment notwithstanding the verdict on the ground that plaintiff Taylor was contributorily negligent as a matter of law. Accordingly, we reverse and remand to the Court of Appeals with instructions to that court to remand to the Superior Court, Guilford County, for entry of a judgment for the plaintiff on the jury's original verdict.

Reversed and remanded.

Justice WEBB dissenting.

I dissent. If the only inference that can be drawn from the evidence is that contributory negligence is a proximate cause of the injury, the plaintiff cannot recover. *Ragland v. Moore*, 299 N.C. 360, 261 S.E. 2d 666 (1980). If the plaintiff did something that a reasonable and prudent man would not have done, or failed to do something that a reasonable and prudent man would have done, under all the circumstances, and the plaintiff should have reasonably foreseen that this would cause the injury that occurred, or some similar injurious result, he is barred from recovery by his contributory negligence. *Kanoy v. Hinshaw*, 273 N.C. 418, 160 S.E. 2d 296 (1968) and *Holderfield v. Trucking Co.*, 232 N.C. 623, 61 S.E. 2d 904 (1950).

In this case, the question is whether the only inference which may be drawn from the evidence is that a reasonable man of ordinary prudence would have foreseen that some injury might occur if he stayed in BJ's Lounge and left before the plaintiff departed. I believe the jury could only infer that a reasonable man of ordinary prudence would have foreseen an injurious result, such as occurred, might have happened and would have left the lounge before he did, thus avoiding the injury.

The plaintiff knew the reputation of BJ's Lounge; he knew the Indians often carried knives and guns and that they often

started fights when assembled in large numbers; he knew that his friends had left the lounge and that he had with him only his wife and a friend who could not defend himself; and he told his wife Bear Suits would cause someone some trouble that night. From this evidence, I believe it can only be inferred that a reasonable man of ordinary prudence would have foreseen that some trouble and injury might occur and would have left the lounge. I believe it can only be inferred that a reasonable man of ordinary prudence would not have stayed in the bar when the danger of violence was so apparent. A reasonable man would have done as plaintiff's friends did and left the lounge before there was trouble. I believe the plaintiff deliberately exposed himself to danger of which he should have been aware. This is contributory negligence as a matter of law. *Burgess v. Mattox*, 260 N.C. 305, 132 S.E. 2d 577 (1963).

I also agree with the following language in Judge Martin's opinion in the Court of Appeals:

Plaintiff had knowledge at least equal to that of defendants of the violent nature of Suits and his companions and of the volatile atmosphere present in the bar when he confronted Suits over the shoving of Huffman. With that knowledge, plaintiff confronted Suits and invited him outside to fight. When Suits refused, plaintiff continued to stand beside him, repeating the invitation, even though he could have left. The potential for danger and physical harm inherent in the confrontation with Suits was as well known to plaintiff as to defendants, yet, with such knowledge, plaintiff exposed himself to the danger by approaching Suits, engaging in a heated verbal exchange and delivering the first, and only, blow. It was certainly foreseeable to plaintiff that his physical attack on Suits would provoke a violent response from Suits' companions. Plaintiff had a duty not to needlessly expose himself to danger, which he clearly violated in this case. *See Witherspoon v. Owen*, 251 N.C. 169, 110 S.E. 2d 830 (1959). Moreover, plaintiff voluntarily participated in the affray, thereby helping to create the situation from which his injuries arose. It is elementary that one may not recover damages for injuries resulting from a hazard he helped to create. *Blevins v. France*, 244 N.C. 334, 93 S.E. 2d 549 (1956); *Blake v. Great Atlantic & Pacific Tea Co.*, 237 N.C. 730, 75 S.E. 2d 921 (1953).

*Taylor v. Walker*, 84 N.C. App. 507, 511-512, 353 S.E. 2d 239, 241-242 (1987).

I vote to affirm the Court of Appeals.